# JOHN & WILLIAM FINNEY vs. BENJAMIN F. WATKINS.

Personal property which is necessarily connected with the free-hold by a tenant, for the purpose of carrying on the trade or business for which it has been demised to him, (such as a hydraulic press, used by a tallow chandler, let into the ground and walled up with solid masonry, the wooden portion of which was nailed partly to the floor and partly to the rafters of the building) does not thereby *"attach"* to the realty, but remains the chattel of the out-going tenant, and may be removed by him at the termination of his lease.

## APPEAL FROM ST. LOUIS CIRCUIT COURT.

### STATEMENT OF THE CASE.

This was an action of trover brought by Watkins against J & W. Finney for a boiler and fixtures, one hydraulic press with pumps complete, and other property, (all of which was the implements used in a candle factory in the manufacture of candles, and some materials of which candles were to be made.) Plea, not guilty. At the trial, the plaintiff offered in evidence a paper purporting to be a bill of sale by Wm. H. Saunders to the plaintiff, of all *his*, *Saunders*, *right, title and interest in his candle factory*, one boiler and fixtures, one hydraulic press with pumps complete, and other specified property, and whatsoever else about the factory that is necessary to carry on the candle making business, the empty carboys which held vitriol included, having first called as a witness, George A. Hyde, who testified that the paper was acknowledged before him the ninth day of June, 1842, by Wm. H. Saunders, that it was William H. Saunders' act and deed ; that he did not know Saunders' signature: did not see him sign the paper, nor did he sign it as a witness to the signature of Saunders. The paper purported to have been acknowledged as the act and deed of Saunders, before Hyde as a justice of the peace, and had been recorded in St. Louis county. The defendants objected to the admission of the paper in evidence, because the signature of Saunders thereto was not proved, because the execution of the same was not proved, and because it was not authenticated properly, but the court admitted it in evidence, to which the defendants excepted. Subsequently, another witness proved the signature of Saunders.

The plaintiff then proved that Saunders and William M. Hague were partners in the candle factory, and gave evidence tending to prove that Hague had assented to the sale by Saunders to Watkins, and had agreed to work in the factory for Watkins ; that Saunders had delivered the key of the factory to plaintiff. That Saunders shortly after ran away, and Hague delivered the factory and property in it to John & Wm Finney, and John Lee and plaintiff demanded the property (mentioned in the bill of sale of Saunders) and other bills from William Finney ; that he refused to give it up. It was proved that the fee of the land, where the factory was situated, belonged to J. & W. Finney, they having leased the same for 10 years to said Saunders & Hague, and that the property mentioned in the bill of sale of Saunders to Watkins was worth more than the amount alleged to have been paid by Watkins for it: that John and William Finney were partners. The bill of sale bore date the ninth of June, 1842, and the plaintiffs gave in evidence an agreement of Saunders of the same date, that he would pay rent to Watkins from that time to the first of July, 1842.

The defendants then proved that the firm of Saunders & Hague was indebted to them, and that on the 2d July, 1842, said Hague conveyed to John Finney, William Finney and John Lee, composing the firm of Finney, Lee & Co., by bill of sale of that date, the property at the factory in consideration of the indebtedness of Saunders & Hague to J. & W. Finney, and the liabilities assumed by William Finney, and also by John Lee for Saunders & Hague. The de-

fendants also proved that the two Finneys and John Lee were partners under the name of Finney, Lee & Co., and had a running account with Saunders & Hague, having repeatedly supplied them with stock for the manufacture of candles, and bought candles of them, and sold candles for them.

The defendants then offered in evidence the deposition of said John Lee on their behalf, the same being material to them, but the plaintiff objected to the same on the ground that said Lee was incompetent as a witness for defendants, on the ground, as he assumed, of interest; and the court excluded the said deposition on the said ground, to which the defendants excepted. The defendants then proved that the Hydraulic press (part of the property sued for) was put into a hole dug into the ground and walled up with solid masonry ; that the bottom of the cylinder rested on flanges on the stone wall even with the floor, but the press was not otherwise attached to the wall than by resting on it—flanges placed in the wall—and that the part of the press around the cylinder was of plank and nailed to the floor, and braces were nailed to the press, and also to the rafters of the building to steady the press. The press was braced, braces nailed to the press, and plank could be taken down, taken away ; could take the braces down by drawing out the nails, then lift out the cylinder. 3 or 4 braces were slightly nailed to the rafters in one end and to the press by the other. It would not injure the building to take the braces down ; the braces were merely to hold the press steady. That John Finney paid for putting up the press partly in 1841, and partly next spring ; the work had been done for Saunders & Hague, and they were to have paid for it. There was a hat closet around the press, lathed and plastered, and fastened to the floor and ceiling, so that the press could not be removed without tearing it away.

Defendants also gave evidence tending to prove that Hague did not assent to the sale by Saunders to plaintiff, and did not know of such sale.

The plaintiff then gave in evidence an agreement proved to be in the hand-writing of John Finney, of Finney, Lee & Co., with Hague, referring to the conveyance by Hague to Finney, Lee & Co., and binding them to return the premises to Hague when the stock on hand was manufactured, provided it should be sufficient to pay the indebtedness to them after paying all expenses ; or if the stock manufactured should not repay them, then Hague might make an arrangement for carrying on the business with them, or with any other person, by securing the balance due them ; and also agreeing to pay Hague at the rate of fifty dollars per month for manufacturing the stock then on hand.

The court, upon motion of the plaintiff, gave to the jury the following instructions :

If the jury find from the evidence that Saunders & Hague, or either of them, were the owners of the articles of personal property sued for in this action, or any of them, and that they were sold and delivered by the said owner or owners to the plaintiff for valuable consideration paid, or to be paid, that said purchase was made by the plaintiff bona fide, honestly, and that afterwards and before the commencement of this suit, defendants got possession of the same articles without the consent of the plaintiff, and retained them, and refused or neglected to deliver them to him, notwithstanding he demanded the same from them, then they will find for the plaintiff.

2d. That if the jury find for the plaintiff, the measure of damages will be the value of the articles of personal property belonging to the plaintiff, taken and held by the defendants at the time of the taking, with interest thereon from that date.

3rd. That the hydraulic press sued for in this action with its appurtenances, is in its nature personal property, and may be sued for in an action of trover, and recovered when a right of recovery is established, notwithstanding the jury may find that it was set up for use on a solid foundation of masonry, and supported by flanges resting on masonry, and by braces nailed to the rafters of the building.

4th. That if Saunders, or Saunders & Hague, were tenants of defendants, and placed the said hydraulic press on the leased premises, and used the same for the purpose of carrying on a candle factory, and the trade of candlemakers, then the said press and appurtenances

might be removed by said tenants, and belonged to them, notwithstanding it was supported on the foundation by flanges and also supported above by braces or other fastenings to the building, and is to be considered as personal property in this suit.

5th. That a sale by Saunders of personal ʳeffects and articles of the firm of Saunders & Hague to plaintiff, was sufficient to pass title thereof, if assented to by Hague, if such sale was made and assent were given.

6th. If Saunders sold the articles in question to plaintiff, gave the deed read in evidence to him, and Hague then or afterwards assented thereto, and the sale of the articles therein specified, then the title of them passed, although belonging to the firm of Saunders & Hague.

7th. That a resting upon the soil and freehold, or on masonry erected thereon, or an attachment thereto by braces in order to keep the machine firm, fastened with nails to the main building, is not necessarily such an annexation as makes the property a part of the freehold. And the court of its own motion, gave to the jury these instructions :

1. If the jury are satisfied from the evidence that the property, or any part of it, specified in the bill of sale from Saunders to Watkins, dated June 9th, 1842, belonged to a firm consisting of the said Saunders and Hague, then said bill of sale alone could not operate in law to convey to Watkins the title to such property ; inasmuch as it does not purport to have been executed by Saunders as the agent or in the name and behalf of said firm.

2. Although a sale by Saunders of the personal effects and stock of the firm of Saunders and Hague, with the consent and approbation of Hague, would bind the latter, yet the jury should be satisfied from the evidence, if such sale were made, that Hague assented thereto, otherwise he could not be bound thereby, nor could the plaintiff recover the partnership property from those to whom Hague may subsequently have conveyed and delivered them. To the giving of all which instructions, the defendants excepted.

The court also gave to the jury upon motion of the defendants the following instructions :

1. If the jury find from the evidence that the property for which this suit was brought, or any part of it belonged to the firm of Saunders and Hague, and that the plaintiff purchased only the right and title of Saunders thereto, and that Hague before the commencement of this suit had conveyed and delivered said property to John and William Finney and John Lee, in that case the plaintiff is not entitled to recover for such property.

2. If the jury find from the evidence that any part of the property mentioned in the declaration of this case, was let into and attached to the soil and freehold and had not been severed therefrom before the commencement of this suit, the plaintiff cannot recover for such property in this suit.

3. The jury are to judge what constitutes a letting into the soil and freehold, and an attachment thereto, under the instructions already given. And the defendants prayed the court to give to the jury the following instructions which the court refused to give, to which refusal the defendants excepted.

1st. That unless the jury find from the testimony that the plaintiff Watkins owned and possessed the property sued for, or some of it, and that the defendants or one of them, got possession of the same and wrongfully converted it to his or their own use, the jury ought to find for the defendants.

2. The bill of sale from Saunders to Watkins of the date of 9th of June 1842, and in evidence before the jury does not operate in law to convey to Watkins the title to any property which at the date of said bill of sale belonged to the firm of Saunders and Hague.

3. There is no evidence of a conversion of any property mentioned in plaintiffs declaration, by the defendant John Finney to his own use, and that the jury cannot find the said John Finney guilty, unless they find that he converted said property, or some of it, to his own use.

4. If the jury from the evidence that Saunders attempted to sell all the machinery, untensils and stock of the firm of Saunders and Hague, to plaintiff, so as to put an end to the business of the firm without the consent or approbation of his copartner, Hague, in such case said Saunders could not convey the title to the partnership property, to the plaintiff.

JOHN & WILLIAM FINNEY vs. BENJAMIN F. WATKINS.

There was a verdict for the plaintiff against the defendants for $3817 07, and a notice for a new trial, which was overruled, and the defendants excepted.

SPALDING for appellants.

1. The first instruction of defendants, refused by the court requests the court to tell the jury that they must find that Watkins owned and possessed the property sued for, or some of it, and that the defendants got possession and wrongfully converted it to their use, in order to find for plaintiff.    This instruction is erroneous in these particulars.

1st. Because it uses the general words "owner," which might mislead and occasionally would, as in fact *ownership*, is not necessary to the action.

3 Stark Ev. 1482, title "trover," that a special property, and uses, and a temporary *interest* is all that is needed to sustain the action as bailees, carriers, pawnees, a borrower, &c., who are by no means "*owners;*" for by that word, something further, would be generally understood.

2nd. Nor was possession by plaintiff necessary to sustain the action, though both ownership and possession, are required by the instruction.

3 Stark Ev. 1482, 1483, 1488, that the action may be maintained by a person having only a special property, and no *possession*.

1 Chitty Plea. 150, property general or special, right of immediate possession, all that is needed.

2nd. The second instruction of defendants refused, calls on the court to say that the bill of sale of Saunders to Watkins did not operate to convey to him the title to any property, which at its date, belonged to the firm of Saunders & Hague.

1st. This was erroneous, for the proof was, that Hague concurred in the transaction and ratified the sale.    If such were the fact, the instructions would have misled.

2nd. It was proved also, that Hague sold out his interest to Saunders, after the bill was made ; or rather, approving of the bill of sale at the time, he afterwards sold all his claims on the concern of Saunders and Hague, to Saunders before this suit was brought.

3rd. The third instructions of defendants refused, asserts that John Finney one of the defendants, is not liable, as there is no evidence of any conversion of any of the property to his own use, and as he could not be liable without that evidence.

1st. That there was evidence, that John Finney converted the property, viz : the bill of sale of the disputed property to John Finney, Wm. Finney and John Lee, to secure among other things, a debt due to John and William Finney, and possession under it.

2nd. The receipt for said bill of sale, is signed by the firm of Finney, Lee & Co., composed of John Finney, Wm. Finney and John Lee, as it shows by reference to the bill of sale, and shows they (John Finney, one of them had got possession of the disputed property, and exercised dominion over it, and disposed of it for their own uses, and benefit; that is the firm of Finney, Lee & Co., John being one of them,) converted the property to their own use, and in part to secure a debt due to John and William Finney.

3rd. Mr. Divine, witness for plaintiffs, states respecting his working at the establishment, and says that they were weighing "*some* days before the *Finneys* came there." He is speaking of the possession taken under Hague's bill of sale, adverse to the plaintiffs title ; and uses the plural, "Finneys." Also says "the Shids were there when the Finneys came," and again. "It was William and John Finney, they took possession from Hague." Had not helped Watkins along, before the "Finneys got there."

And if any demands were necessary before bringing suit, (which was not) a demand of one of the Finney's, was a demand of both.

1 Chitty Plea. 153, conversion may be, by *wrongful taking*, or *illegal assumption of ownership*, or illegal using or misusing chattels, or by wrongful detentions.

In case of wrongful taking, it is not necessary to make demands.

1 Chitty Plea. 153, nor is demand necessary when there is wrongful assumption of the right of disposing of goods.

Ibid. p, 154-5, demands and refusal is necessary only, where trespass or wrongful assumption of ownership is not proved.

Collin on partnership 252, partners like individuals, are liable for the negligence, &c., of their servants; and if one of the partners act he is considered in this instance as the servant of the rest."

Ibid. 253, "upon the same principle partners may be sued in an action of "trover," although there was no joint conversion in point of fact."

John Finney, was, as there is evidence tending to show assenting at least, to the conversion if not personally acting in it.

Story on partnership 257, sec. 166, facts not committed in course of partnership business, are not to be answered for, by partnership, unless assented to. "But costs may arise in the course of the business of the partnership, for which all the partners will be liable, although the act may not in fact, have been assented to, by all the partners," as if, one of a firm, sell goods, consigned to them, in violation of instructions, "all the partners would be liable, in *trover."* Ibid. sec. 168.

The third, fourth and seventh instructions of plaintiff, relate to the condition of the property, and the laws of fixtures, and the law was rightly declared therein. They assert first, that the hydraulic press, being personalty in its character, might be sued for, as personalty, where a right of recovery is established, notwithstanding, it was supported by flanges resting on masonry, and by braces nailed to the rafters of the building: 2nd. and that tenants that erect or set up machinery, to carry on their trade on leased premises, do not thereby, of course lose the same, but the same remains theirs, and is personalty, as between them and the landlord; and third, that a resting upon the soil or on masonry, or on attachment thereto, by braces, in order to keep the machine firm, fastening with nails to the main building, is not necessarily such annexation as makes the property a part of the freehold.

49 Law Libr. (Grady's law of fixtures 4,) Buller's Nisi Prius 34; Culling vs. Tufferal 3 East. 38; Elves vs. Maw, a case of annexation making it realty, but Lord Ellenborough, recognizes doctrine of Buller, that a house resting on blocks, and pattens lying on the ground, and not fixed in it might be removed by tenant.

2 Bam. and Al. 165, Davis and al vs. Jones and al; parts of a machine had been put, by tenant during term, and could be removed without injury to the other parts of the machine or building; held to be goods and chattels of outgoing tenant, and *trover* would lie for them, that as between landlords and tenants, they were chattels, &c., though they were attached to the building.

B. and Ad. 161, (20 E. C. L.) a mill resting on foundation of masonry, is chattel.

4 Ad. and Ellis, 884, (31 E. C. L.) Wansbrough et al vs. Maton, tenant erected wooden barn on foundation of masonry, the foundation being let into the ground; it rested on the foundation, tenant may remove it, and maintain *trover* for it. This was an action of outgoing tenant, against the landlord, who had leased the premises, comprehending house to another tenant.

4. B. et al. 206, (6 E. C. L.) "Trespass for taking goods chattels and effects," will lie for certain fixtures &c.

5. Mees, and Wels. 175, Shem vs. Richie, as to moving of wood "fixtures;" and that houses and other edifices placed on and not let in to the freehold, are recoverable in trover.

6. Greenl, 452 Agden vs. Howard; 1 Fairfee 429, 2 do 371, 3 do 162, dwelling houses and saw mills erected on land of another, under sanction of the relation of landlord and tenant, or express license of owner of land, are property of the builder, and are not considered as becoming part of the freehold, and trover will lie for them.

Gradys law of fixtures 8, (49 law, Libr) also p. 11, as to landlord and tenant, and p. 18, as to trade, and p. 32, and 52, 55, 60, 83.

Gibbons on law of fixtures (11 law, Libry,) p. 15 & 16, as to what is, "fixtures," p. 22, 23, 24, 25, as to trade fixtures ; and page 19 and 20, that though fastened different ways, still are chattels, as machinery fixed to floor or otherwise by bolts or screws, and carpets, by nails.

1. Mis. Rep. 361, Hunt vs. Mullanphy annexations to freehold for trade and manufacture are of personal character, a kettle or boiler, put up in a tannery with brick and mortar, not a fixture unless something else to show it was so intended.

1. Mis. Rep. 442 Philipson vs. Mullanphy. This was lease of *lot, brewery*, and utensils ; so that the question did not arise what the tenant generally may remove ; but the case turned on the words of the lease. But the court makes general remarks on the subject that in such cases the lessee is the principal and the means of carrying on his trade, the accessories.

3. Mis. Rep. 149 (207) Burk vs. Baxter, still set up in furnaces in the usual manner for making whiskey are not fixtures but personal property.

The Finneys entered as landlords, as the lease was verbal, for 10 years, it was in effect a lease at will and they (Finneys) entered claiming the right to have possession.

The possession of the Finneys was also this possession of Lee ; It was the possession of two of co-trustees with the consent of the third. A recovery against the two by trover, on a paramount title, *will* be conclusive on the third, upon principle. It is undoubtedly binding on the two sued. How can the third, one sue for it? He cannot sue alone, for by rules of law, he was bound to sue in the name of all three. He must then go into chancery and file his bill, and can he get any relief, when his co-trustees have been compelled to pay the value of the property and could not help it ? Will he be permitted to recover of them ; or would not chancery hold that the recovery against the *two* (Finneys) as it was by title paramount, is to stand and they (the Finneys) to be reimbursed before the other, Lee, can get his debt? 1 Hill's Reports 99, Moak vs. Johnson.

GEYER & DAYTON for appellee.

I. That the deposition of Lee was properly excluded.

The deposition not being preserved in the bill of exceptions, every thing which bore upon Lee's competency in the court below, is not before this court, this court ought therefore to presume that the witness was shown to be incompetent, whether such incompetency does or does not appear by the record, as presented.

But the record does show that the witness was interested in the event of the suit. A recovery against the Finneys would deprive the witness of the benefit of the conveyance, made to the three, for the benefit of all.

Paull vs. Mackey 3 Watts 110.

Harrison vs. Vollance, 1 Bingham 38, found in 8th Eng. com. law Reports page 239.

Dimond vs. McDowell, 7 Watts, 510.

Saunders on pleading and evidence, 2 vol. 942, and seq.

Judge BIRCH delivered the opinion of the court.

We deem it scarcely neccessary to refer to authority, in order to determine that the property in question was personal, and properly the subject of suit in the form of action adopted by the plaintiff. The liberal and least erring rule of modern jurists, namely, that whatever is necessarily connected with the freehold by the tenant, for the purpose

of carrying on the trade or business for which it has been demised ·to him, does *not* thereby "attach" to the realty, but remains the chattel or fixture of the out-going *tenant* is believed to apply too obviously and plainly to this transaction, to need either elaboration or elucidation. Upon this view, therefore, of the law and the testimony, the circuit court might have proceeded even farther than it did in the aggregate bearing of its instructions for the plaintiff, and yet have remained exempt from error upon that score.

The right of the plaintiff to the property sued for seems also to have been properly found by the jury, under such instructions and such testimony as the defendants, at least, cannot complain of. To say nothing of the acknowledgement before the justice, and the recording of the conveyance on the same day, except that we perceive no objection that ·it was sent to the jury for at least what it was worth, the testimony of Mathews ( called subsequently) could leave no reasonable doubt upon the minds of the jury that the bill of sale was the act and deed of Saunders; and it being also in testimony by other witnesses that the property was cotemporaneously delivered to the plaintiff by Saunders, and that the sale was cotemporaneously assented to by Hague, the title of Watkins may well have been deemed complete and conclusive against the arrangement subsequently made between the defendants and Hague, and this, whether there had been a partnership between Saunders and himself or not.

It will be perceived that we have reached the foregoing conclusions irrespective of the supposed testimony of Lee, whose depositions, for aught that appears to the contrary, was rightfully excluded from the jury. His interest, even as apparent upon the face of the transfer from Hague to the Finneys would seem of itself to disqualify him from testifying generally, but whether or not, the record is not so presented here as that this court can *see* that the court below erred in excluding his testimony. As neither the deposition itself, nor the substance of it, is preserved in the bill of exceptions, we cannot know either what facts it essayed to establish, or what admissions (of interest, possibly,) it may have of itself contained ; and the legal presumption being in favor of the correctness of such adjudications as are predicated upon inspection in the court below, we cannot, unless that presumption be rebutted by a presentation of all the facts upon which it may have proceeded, either review or reverse its judgment. The duty of showing this, it need scarcely be added, devolves upon the party complaining.

The question whether the Finneys were in the possession and wrong-

38

ful retention of the plaintiff's property, seems also to have been properly committed to the jury under the instructions of the court, the additional instructions asked by the defendants being, to say the least of them, ambiguous or unnecessary. The whole case, in short, seems to have been conducted not only with legal fairness but with an apparent liberality towards the defendants, and we consequently perceive no reason for trying the case anew. The judgment of the circuit court is therefore affirmed.