BARNARD STATE BANK, RESPONDENT, v. WILEY LANKFORD, ET AL., APPELLANTS.*

. Kansas City Court of Appeals.   December 17, 1928.

---

*Corpus Juris-Cyc. References: Chattel Mortgages, 11CJ, section 83, p. 463, n. 69; p. 464, n. 76; section 95, p. 468, n. 31; section 193, p. 517, n. 20; section 323, p. 617, n. 86; section 342, p. 630, n. 51; Trial, 38Cyc, p. 1618, n. 36; Trover and Conversion, 38Cyc, p. 2048, n. 72.

A. F. Harvey for respondent.

BLAND, J.—This is an action in two counts; the first, for conversion of one thousand five hundred sixty bushels of corn and the second, for money had and received, both being on account of the same transaction. The case was submitted by plaintiff to the jury under the count for conversation, resulting in a verdict in favor of plaintiff in the sum of $1014 and defendants have appealed.

The facts show that on March 7, 1925, one Hanson was a tenant on what is known as the Roswell farm, consisting of two hundred forty acres lying west of the town of Barnard in Nodaway county, and on that day he executed a promissory note in the sum of $5000 to plaintiff, payable upon demand, and bearing seven per cent interest from date. The note was secured by chattel mortgage of that date and duly recorded on March 11, 1925. This mortgage recited that it covered—

". . . an undivided one-half interest one hundred ten acres corn and fifty acres oats being planted on home farm Sec. 32, Twp. 62, Rg. 35. One hundred and ten acres corn and fifty acres oats on Roswell farm Sec. 35, Twp. 62, Rg. 36, the same being located on the Peter Hanses farm."

No question arises in this suit in reference to the corn raised upon the "home" farm where Hanson resided but only that corn upon the Roswell farm. There was no corn on the Roswell farm at the time the mortgage was executed. The crop grown thereon during the season of 1925 was not planted until about the last of April or first of May of that year. According to plaintiff's evidence, one hundred four acres of corn were raised on the farm in question during the year 1925. According to defendants' evidence one hundred fifty acres were planted and raised.

On June 25, 1925, Hanson executed to defendant, Lankford, a chattel mortgage, recorded on September 13, 1925, describing forty acres of corn which, according to defendants' evidence, was intended to mortgage forty acres of growing corn on the Roswell farm not covered by plaintiff's mortgage. Lankford's mortgage was given to secure Hanson's note to Lankford in the sum of $4103.29. The note was payable upon demand and bore eight per cent interest from date. It seems to be conceded that the Lankford mortgage is void for the reason that it did not properly describe the land upon which the corn was being grown. These defendants are not claiming any rights under this mortgage.

Hanson testified that at the time the note was given to Lankford he informed the latter of the bank's mortgage and told him, "I don't know if they (the Lankford note and mortgage) would hold good or not, that he (Lankford) would have to stand his own chances. I would not sell it, that he would have to take his own chances of haul-

ing it . . . he would have to run his own risk of taking the corn and stand a lawsuit with Barnard State Bank if he took the corn.'' Lankford admitted that at the time he took his mortgage he had examined the records and found plaintiff's mortgage but found it covered only one hundred ten acres of corn.

The corn grown by Hanson on the Roswell place was harvested in November and December, 1925. About the time it was gathered Hanson went to the bank and stated that he had ''no place to crib his corn, no money to provide cribs,'' so the bank furnished the lumber for the floors of the cribs and wire for the sides and directed Hanson to ''crib it'' (the corn). Part of the corn was cribbed in the barn upon the premises and when that was full the remainder was put in wire cribbing, consisting of three or four cribs. At the time the cribbing was furnished, an agreement between plaintiff and Hanson was made that—

''. . . the corn was to remain there until either us or he (Hanson) should find a buyer for it and if he found a buyer for the corn he was to submit the price to us at the bank and if agreeable, we would consent to the sale of it.''

In the meantime the bank was attempting to find a purchaser. It, in fact, sold a small amount of the corn to one Messick and the corn was delivered to Messick by Hanson. Before the rest of the corn could be sold, an officer of the bank found that a large part of the corn (including the corn in controversy) had been removed.

Lankford testified that about the first of March, 1926, he purchased some of the corn on the Roswell place from Hanson for which he was to pay Hanson the market price; that in December, 1925, or January, 1926, he had sold twenty-five hundred bushels of corn to the defendant Flemming; that he purchased the corn from Hanson for the purpose of fulfilling in part his contract with Flemming; that he bought of Hanson the corn in the south crib or the one ''next to the hog house;'' that he procured one Cox to haul the corn to the farm of the defendant, Flemming, or the defendants, the Cunninghams; that Cox hauled one thousand fourteen bushels and twenty pounds to said farm and two hundred eighty-nine bushels and thirty pounds to Lankford's place; that Lankford employed and paid Cox to haul this corn and that he procured the corn out of the crib last mentioned and from the.bottom of two other cribs; that Lankford directed Cox where to get the corn. Lankford testified that Hanson asked him if ''he would not clean that up,'' that is, the corn in the ''two bottoms,'' being some corn in the bottom of two of the other cribs. All of this corn was hauled between April 19 and 22, 1926. There was evidence on the part of plaintiff that the south crib next to the hog house held about one thousand bushels. Lankford testified that he did not pay Hanson cash for the corn but gave the latter credit upon his note for one thousand three hundred three bushels of corn

at sixty-five cents a bushel. The endorsement upon the note shows that this credit was made May 1, 1926.

Hanson testified that he did not sell Lankford any corn; that he did not know when Lankford had the corn hauled from the Roswell place and did not know how much he had hauled away. However, he testified that he raised one hundred fifty acres of corn on the Roswell place, gathered the corn which Lankford's mortgage was supposed to cover, and stored it in the south crib near the hog house.

On April 19, 1926, the defendant, Flemming, who was in partnership with defendants, the Cunninghams, in the stock raising and feeding business, made an agreement with Hanson to purchase all corn then on the Roswell place, estimated at three or four thousand bushels. Of this amount four hundred eighty-six bushels and sixty pounds were delivered to the partnership by Hanson through his agent, McGinnis. This arrangement was made without the knowledge or consent of plaintiff. The purchase price of the corn was sixty-five cents a bushel, but it seems that this corn was never paid for. There is no evidence as to when payment was to be made. Hanson employed one McGinnis to haul this corn and the latter hauled it about the first of May, 1926. He hauled six loads, obtaining the first four loads out of the wire crib southwest of the barn and the balance from the barn. Hanson directed him to haul the corn and he was paid for the hauling by Flemming "by order of Mr. Hanson." Hanson thought the hauling was costing him too much and said that he would personally haul the corn during the summer by a more direct route. For some reason no more corn was hauled to fill this contract. McGinnis testified that as far as he knew Lankford had nothing to do with the transaction between Hanson and Lankford's co-defendants.

On the 3rd of April, 1926, Hanson executed another chattel mortgage to plaintiff to secure the same debt covered by the chattel mortgage dated March 7, 1925. The 1926 mortgage recited that it covered, among other things, "Five thousand bushel yellow corn cribbed in barn and three round cribs on Roswell farm in Sec. 35, Twp. 62, Range 36, Nodaway county, Missouri, subject to $1000 rental." This mortgage was duly recorded on May 14, 1926, after all of the corn in question came into the possession of defendants.

Plaintiff states in its brief that this suit is not to recover for any part of the corn delivered to Lankford to his place but for the corn sold by Lankford to his co-defendants and delivered to them and the corn sold by Hanson to Lankford's co-defendants. There was no question raised at the trial by defendants as to any misjoinder of parties defendant but plaintiff admits that it is not entitled to recover as against Lankford for the alleged conversion by his co-defendants of the four hundred eighty-six bushels and sixty pounds of corn sold by Hanson to Lankford's co-defendant unless Lankford

aided and assisted his co-defendants in the conversion of the last-mentioned corn, and plaintiff claims that there is evidence of joint conversion of this corn by all of the defendants. In pursuance of this theory plaintiff procured the giving of its instruction No. 2 which told the jury, among other things, that—

"Flemming and Cunninghams would not be liable for the corn delivered to them by Lankford, or Lankford liable with them for corn delivered or caused to be delivered through Hanson or his truck driver unless they were aiding or assisting each other or jointly acting in converting such corn, if any, if you find from the evidence that any corn covered by plaintiff's mortgage was so converted and that plaintiff's mortgage covered such corn and there was not more than one hundred ten acres of corn grown on said Roswell farm in 1925."

It is insisted by the defendants that the giving of this instruction was error and we think there is no question but that it was. There is no evidence of any joint conversion of the four hundred eighty-six bushels and sixty pounds that went to Lankford's co-defendants. The only evidence concerning this matter is as follows: Lankford testified that he might have told the defendant, Flemming, that "Hanson had some more corn for sale;" that he did not suggest that Flemming buy it; that he did not tell his co-defendants where the corn that he had sold them in December, 1925, was to come from. The evidence shows that they did know that the Hanson corn which Lankford had Cox to deliver to them, at the time it was delivered, came from the Roswell farm. McGinnis testified that he learned that Flemming had bought the corn from Hanson, that he learned this from Flemming and the Cunninghams or Hanson; that he was directed to haul the four hundred eighty-six bushels and sixty pounds of corn in question to the Flemming or Cunninghams' place by Hanson; that Flemming paid for the hauling of it on the order of Hanson and that, as far as he knew, Lankford had nothing to do with it and was not connected with the transaction in any way. Cox testified that after he had hauled the corn for Lankford, the latter informed him that he thought that Hanson had sold some corn to Flemming and that possibly Cox could get the job of hauling the Flemming corn and that Lankford would see Hanson and see if he wanted it hauled; that Lankford would try to get the job of hauling for the witness. Cox did not haul the four hundred eighty-six bushels and sixty pounds of corn. The evidence wholly fails to show that Lankford had anything to do with the conversion, if any, of the four hundred eighty-six bushels and sixty pounds of corn by his co-defendants, and plaintiff's instruction was erroneous.

As the case no doubt will be retried, it is necessary to cover other points raised by the defendants which will likely come up again. It is claimed that the chattel mortgage executed by Hanson to the

bank on March 7, 1925, was void. We think there is no doubt but that this point is well taken. In examining the punctuation contained in the mortgage, it will be noted that there is a period after the description of the "home farm" and then a new sentence begins which reads "one hundred acres corn . . . on Roswell farm," etc. There was no corn upon the Roswell farm at the time the mortgage was executed and therefore it covered no corn unless it can be read to cover corn thereafter to. be planted (no corn being in the process of planting at the time) and if it be given this construction, it is void because it does not state the year in which it was to be grown. [Barr, Sheriff, v. Cannon & Gunn, 69 Iowa, 20; McConnell v. Langdon, 3 Idaho, 157; Teigen v. Occident Elevator Co., 200 N. W. 38 (No. Dak.) ; Sonka v. Yonkers, 180 N. W. 875 (Iowa) ; Pennington v. Jones, 57 Iowa, 37; 1 Cobbey on Chattel Mortgages, sec. 168; 11 C. J., p. 468.]

The cases relied upon by plaintiff are not in point. In the case of Myers-Shepley Co. v. Elevator Co., 124 Pac. 1051 (Wash.), the mortgage described the property as "all the undivided two-thirds interest in and to the wheat grown, sown or raised" on the property therein described, and the mortgage was held sufficient on account of the existence of a statute of the State of Washington concerning chattel mortgages on crops, and the Pennington case, that we have cited, supra, upon the point now under discussion, was distinguished on account of the existence of the Washington statute. We have no such statute. The Washington case is also different in that the note secured by the chattel mortgage was to become due on September 1, which tended to indicate that it was the crop of that year that furnished the security. In the case of Perkins v. Alexander, 209 S. W. 789 (Texas), the mortgage was described as "all . . . cotton . . . grown on the farm I am now living on . . . for the year 1915 and all succeeding years until the amount of this note is paid." From the description of the mortgage in that case, together with other facts peculiar to that case mentioned in the opinion, the case is clearly distinguishable.

It is, however, claimed that before the purchase of any of the corn in question by the defendants, plaintiff took possession of the corn under its mortgage of March 7, 1925. There is no evidence of this. It is true that the testimony tends to show that the bank furnished the lumber and wire for the purpose of constructing the cribs but this material was turned over to Hanson and he built the cribs and put the corn into them. A portion of the corn was stored in the barn over which plaintiff took no dominion. The mortgage given by Hanson to plaintiff on April 3, 1926, recited that the "mortgaged property was to *remain* in the possession" of Hanson. There was no such taking of possession by plaintiff of the corn in the case at bar as was taken in the case of Cummins v. King, 266 S. W. 748, cited by plain-

tiff. There is no merit in this contention of plaintiff. [Barr, Sheriff, v. Cannon & Gunn, supra.]

While Lankford when the alleged purchase of corn was made by him, had notice of the mortgage of March 7, 1925, and for this reason he stood in the same position as a party to the mortgage (11 C. J. 460), the description was so defective that the mortgage was not valid even as between the parties to it. [Barr, Sheriff, v. Cannon & Gunn, supra; Klebba v. Missouri Meerschaum Co., 257 S. W. 174, 175.]

There is some question as to whether the mortgage given by Hanson to plaintiff on April 3, 1926, is valid. It described "five thousand bushels yellow corn cribbed in barn and three round cribs on the Roswell farm." Defendants' evidence tends to show that there were four cribs of corn upon the Roswell farm. It is questionable whether plaintiff's evidence tends to show to the contrary. If there were four cribs, the mortgage was void as to the corn in the cribs. [Stonebraker v. Ford, 81 Mo. 532; Klebba v. Missouri Meerschaum Co., supra.] Plaintiff's witness, Cole, was asked—

"Q. You say there was just three of these round cribs in the lot? A. *Three of the larger ones besides* the little pile by the crib.

"Q. There wasn't four cribs? A. There might have been some cribbing around that little pile, but that was just a small pile; may be a couple of hundred bushels or a hundred and fifty." (Italics ours.)

Before this he described the three cribs and was asked, "Now, was all the corn from this land put into these cribs? A. It was with the exception of a small amount of a little pile east of the two cribs."

Plaintiff's witness, Cox, testified that there were four cribs on the land, two full cribs and "two pieces of cribs." We are unable to judge from the testimony of plaintiff's witness, Cole, as to whether the cribbing around the small pile of corn really amounted to a crib. It seems that the three larger cribs were of a substantial nature with board bottoms in them and with wiring for the super-structure. If the small pile of corn merely had wire placed around it which was not intended for a crib and in reality was not such, then the mortgage was sufficiently definite in describing the corn "in three round cribs" as well as that in the barn.

However, if Hanson sold the one thousand fourteen bushels and twenty pounds of corn in question to Lankford, we think there was no conversion of this corn by anyone even if plaintiff's mortgage of April 3, 1926, is found to be sufficient as to the three cribs. Hanson testified that he did not *sell* any corn to Lankford. His testimony is left in such an indefinite condition it is impossible to tell whether he consented to Lankford's taking the corn in question. Lankford claims in his brief that he procured this corn from Hanson and applied the amount that the corn would bring at the market price to

the payment of the Lankford note. But Hanson does not testify one way or another upon this proposition, but, as before stated, merely said that he did not "sell" any corn to Lankford.

It would appear that the mortgage of April 3, 1926, was not recorded within a reasonable time. Until recorded it was not valid except as to the parties thereto and, of course, furnished no notice to third parties of its existence. As to such parties no lien attached to the corn until the mortgage was recorded. [Ray County Savings Bank v. Holman, 63 Mo. App. 492; State v. Sitlington, 51 Mo. App. 252; Saunders v. Ohlhausen, 127 Mo. App. 546; Sec. 2256, R. S. 1919.] Before it was recorded all of the corn sued for in this case had been reduced to the possession of defendants and they ought not to suffer the pains of conversion as a result of their act. [The Brunswick-Balke-Collender Co. v. Kraus, 132 Mo. App. 328, 333.] If Hanson sold the one thousand fourteen bushels and twenty pounds of corn to Lankford or turned it over to him on his note, then, as the four hundred eighty-six bushels and sixty pounds were actually sold to the other defendants and all of the corn sued for was delivered to the purchasers before the 1926 mortgage was recorded, the bank was not a bona-fide purchaser for value and took subject to all equities in favor of defendants as said mortgage was for a pre-existing debt of Hanson's, the mortgagor, to the bank. [Napa Valley Wine Co. v. Rinehart, 42 Mo. App. 171; Dry Goods Co. v. Bank, 81 Mo. App. 280.] While, perhaps, the title to the four hundred eighty-six bushels and sixty pounds of corn did not pass to Lankford's co-defendants (see Hubbard v. Ins. Co., 222 S. W. 886, 888; Ruediger v. Dennis, 199 Mo. App. 102; Eisenberg v. Nelson, 247 S. W. 244; 35 Cyc. 325), they had possession of the corn under a valid contract of purchase with Hanson, and their rights are superior to those of the bank even as to that corn. (Of course, all of this assumes that the mortgage of April 3, 1926, sufficiently described the corn in the cribs. If it did not, the bank had no right whatever in that corn, as it must recover on the strength of its own title rather than the weakness of that of defendants. [Eggert v. White, 59 Iowa, 464.]

We do not see how there can be any recovery under any theory as for conversion of the four hundred eighty-six bushels and sixty pounds of corn and none as to the remainder of the corn involved unless Lankford took the one thousand fourteen bushels and twenty pounds without the consent of Hanson. If Lankford did this, it would appear that he had no right to the latter corn and as his co-defendants are claiming under him, their rights as to that corn can rise to no higher plane than would Lankford's. So if Lankford took the corn without Hanson's consent, then the bank is entitled to recover as to the corn taken by Lankford (none of which was taken from the barn) providing the bank's mortgage of April 3, 1926, sufficiently de-

scribed the corn in the cribs from which the one thousand fourteen bushels and twenty pounds of corn were procured. At another trial it will be necessary for the case to be tried by plaintiff upon a theory entirely different from that upon which it was tried and submitted to the jury before.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

## ON REHEARING.

FRANK, C.—This case was submitted at the March term, 1928, and an opinion written by BLAND, J., reversing and remanding the cause, was handed down on April 2, 1928. Later a motion for rehearing was sustained and the cause was again submitted to the court for determination.

We have carefully examined the record and briefs of both parties. and have reached the conclusion that our former opinion correctly disposed of the case, and for the reasons stated in that opinion the judgment herein is reversed and cause remanded. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.