SAMUEL FELLER, Trustee, Appellant, v. MRS. M. A. McKILLIP et al., Respondents.

Kansas City Court of Appeals, June 8, 1903.

1. **Lease: MORTGAGE: RECORD.** A lease epitomized in the opinion is held a mortgage between the parties, but not such as to creditors since it was not acknowledged and recorded.

2. **Deceit: REPRESENTATION AS TO MEANING OF LEASE: RENT: PRICE OF GOODS: ACTION.** A lease is held to give the landlord the right to replevin the personal property of the lessee and therefore a representation that the landlord could take such property was not false, though that he could take everything including the goods for which the lessee was owing is false, but such misrepresentation is not actionable for it could in no way affect the pecuniary interest of the lessee.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune*, Special Judge.

REVERSED AND REMANDED.

*Karnes, New & Krauthoff* for appellant.

Submitted a lengthy argument.

*Geo. B. Watson* and *Jas. G. Smith* for respondent.

BROADDUS, J.—The plaintiff sues in replevin as trustee in a certain deed of trust executed by the respondents upon a stock of millinery goods and fixtures conveyed to him to secure a note executed by respondents to Frankel, Frank & Company, wholesale milliners in Kansas City, Missouri. The note was for the sum of $905.30, and dated, as was also the deed of trust, the 8th day of June, 1901, and due one day after date. At the time of the execution of the note and deed of trust, as well as at the time of the issuing of the writ herein, the property in controversy was situated in a building at number 1300 Grand avenue in said city, which building was owned by Jenkins, who was the respondent's landlord. At the time of the execution of the note and deed of trust respondents were indebted to the appellants for millinery goods bought by them from appellants and also indebted to Jenkins, their landlord, for rent, and the note was made to include both of said indebtednesses. On September 20, 1900, Mrs. McKillip rented said building at 1300 Grand avenue from said Jenkins for a term of three years, at a rental of one hundred dollars per month, payable in advance on the first day of each month. By the terms of the lease, which was in writing, it was provided: "In default of the payment of any installment of rent for five days after the same is due she (the tenant) will at the request" of the landlord quit and surrender to him the possession of the premises, but for such cause the obligation to pay rent shall not cease. And it was further provided that all her property, whether subject to legal exemption or not, should be bound and subject to the payment of the rent. This lease was not acknowledged and recorded.

It was shown that just prior to the execution of the note, Mrs. McKillip had some trouble with her landlord and that she was in arrears in the payment of her rent. Her landlord notified her to vacate the building, whereupon she telephoned Frankel, Frank & Co. and asked for an interview with them. This was granted through a member of the firm by the name of Dan Lyons, wherein she explained to him her trouble with her landlord, at which time Lyons called for the lease in question and said: "I will take this down and show our lawyer." And when she said she would mortgage the fixtures of the store to a "chattel mortgage man" to get the balance of the rent due, he told her not to do it—not to do anything until he came back in the morning, or until he saw her again. He came back next morning with his lawyer, the plaintiff, bringing with him, according to Mrs. McKillip's evidence, the note and deed of trust already prepared. The plaintiff, however, testified that he went back to his office on the same day and got them. At said interview, according to Mrs. McKillip's testimony, Lyons said to her: "This lease as it reads is a sort of an iron-clad lease—Mr. Feller will explain it to you." Mr. Feller's explanation was: "According to the terms of this lease as you are behind in rent and he has demanded possession of the room, Mr. Jenkins can turn you out immediately and take possession at once; he can sue you and get judgment inside of five days, and do what he pleases with the fixtures and your stock, and you will be under that judgment; that judgment will stand against you for the balance of this lease, for the balance of the years, no matter where you are." She said to him: "Can he take everything?" His answer was: "From that thing (the lease) he can take everything you have got." She testified that they told her that they would protect her through the summer and would see that she did not suffer; that she told them that the fixtures belonged to her daughter, the co-respondent, as she had

given her a bill of sale on them for money loaned; that the daughter was asked to sign the deed of trust, but declined to do so until she was told that if she did not that Mr. Jenkins could take everything under the terms of the lease because of the non-payment of the rent. Miss McKillip finally gave her consent and signed the paper also.

The evidence tended to show that Mrs. McKillip, who had previously been in the millinery business at Colby, Kansas, on October 1, 1900, opened a store in Kansas City, Missouri, at the number already described; that prior to going into business she consulted Frankel, Frank & Co. who advised her to rent the building in question, and also as to the fixtures she would need, the carpets for the floors, and the shades for the windows; that they also advised her what kind of goods to buy for her business; and that she bought largely from them.

After the execution of the deed of trust and note, no further rent was paid by respondents, and on the 8th of July, 1901, this action was instituted under which the goods and fixtures were taken by plaintiff, and later sold under the deed of trust. The jury found the goods and fixtures to be of the value of $1,800; that respondent was indebted to appellant for the amount of the note and interest at that date in the sum of $1,061.38, leaving a balance due respondent of $738.62, to which was added $41.31 as interest and $300 as special damages, making a total sum of damage of $1,082.93. Before the motion for new trial was passed upon, respondents remitted the sum of $300 as special damages.

The contention of the appellant is: first, that the interpretation of the lease by Mr. Feller was correct as a matter of law; second, that the relation between Mrs. McKillip and Frankel, Frank & Co. was not fiduciary, but that of debtor and creditor; and, third, that conceding the relation between said firm and Mrs. McKillip was fiduciary in character, and the statements

made by Feller as to the force and effect of the provisions of the lease, its falsity is not actionable representation, unless it was made with fraudulent intent.

There can be no doubt but what the lease in question as between the parties was a mortgage. Faxon v. Ridge, 87 Mo. App. 299; Hargadine v. Henderson, 97 Mo. l. c. 386. But as to creditors it was void because it was not acknowledged and recorded. Mead v. Maberry, 62 Mo. App. 557; R. S. 1899, section 3404; Kendall B. & S. Co. v. Bain, 55 Mo. App. 264; Jewit v. Priest, 34 Mo. App. 511.

As the lease was not a formal mortgage giving the landlord the right to enter and take possession of the goods and sell them, he would have to resort to the courts in some form of action to enforce his mortgage. This, appellant does not deny, but claims that he could have maintained replevin for the goods. In our opinion, he could have so maintained an action of replevin upon the failure of the lessee to pay the rent, as he was entitled to have the security applied for that purpose. Such being the law, the statement of plaintiff that the lease was a mortgage and that the landlord thereunder could in five days take all of respondents' property was not a false representation and misstatement of the law, but for all practical purposes it was true. But it was not true that said landlord's claim for rent would be superior and prior to that of Frankel, Frank & Co. as represented by plaintiff, but it would not for that reason give respondents a cause of action for it could not be a matter of any pecuniary interest to them. And it must be conceded that representations in order to be actionable must be such as would effect the pecuniary interest of the party seeking redress.

It is primary law that representations in order to be actionable must be false. The respondents having failed, as we have seen, to prove that the alleged representations were false, it follows that the finding and judgment can not be sustained.

The cause is therefore reversed and remanded. All concur.