BENJAMIN P. SAUNDERS, Appellant, v. WILLIAM
OHLHAUSEN, Respondent.

Kansas City Court of Appeals, November 4, 1907, and January
6, 1908.

**LANDLORD AND TENANT: Lease: Chattel Mortgage: Records:
Possession.** By the terms of a lease the landlord had the
privilege to enter and assist the tenant in caring for crops
raised and to be reasonably paid therefor and retain a first lien
on the crops for such payment. The landlord with the tenant's
assistance and consent supervised the threshing of the wheat
and had his part of it set off. The defendant purchased the
tenant's part of the wheat when the landlord brought conversion
against him.

*Held:*

1. That the landlord's statutory lien did not apply under the
pleadings.

2. That the lien retained in the lease was equivalent to a
chattel mortgage, but to effect the defendant with knowledge
thereof it must be recorded.

3. That the evidence shows no knowledge of the lien on
defendant's part.

4. That the evidence fails to show possession by the plain-
tiff.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A.
Mosman,* Judge.

AFFIRMED.

*S. S. Shull* and *James W. Boyd* for appellant.

(1) The lease read in evidence and under which
John Scott held said premises during the years 1903
and 1904 constituted a lien and mortgage lien in favor
of the plaintiff on the wheat crop raised on said prem-
ises and harvested, gathered and threshed thereon in the
summer of 1904. Feller v. McKillip, 100 Mo. App. 660;
Crawford v. Benoist, 97 Mo. App. 219; Mead v. Mahoney,
62 Mo. App. 557. (2) The evidence shows conclusively,
or we may say certainly tends to show that the plaintiff
expended in caring for said wheat crop in the summer

of 1904 the sum of at least $257.54, at the instance and request of said John Scott. Plaintiff therefore had a lien for said sum on Scott's half of said wheat. (3) The defendant, respondent herein, Ohlhausen received said wheat with the full knowledge of this lien; and from the time he received it in 1904 until the time this case was tried in the circuit court he kept, in Reilly Bank, expressly for the purpose of paying it to the plaintiff, a sum equivalent to the value of said wheat, admitted by him to be $163.95. (4) The defendant refused and still refuses to pay said sum to the plaintiff. (5) When the wheat in question was taken by John Scott to be turned over to the defendant it was in the possession of the plaintiff; and said Scott, in order to haul it to the defendant, took it from the plaintiff's possession.

*L. C. Gabbert, C. H. Hillix* and *James H. Hull* for respondent.

(1) The action of appellant in keeping his mortgage lien off the record until respondent's rights intervened, renders it obnoxious to the section of the statute concerning fraudulent conveyances which avoids such instruments as to all persons except the parties thereto unless possession of the mortgaged or trust property be delivered to and retained by the mortgagee or trustee or cestui que trust or unless the mortgage or deed of trust be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides. R. S. 1899, section 3404. (2) This statute means not a constructive, but an actual, open and visible change of possession, regard being had to the situation and character of the property and must take place before the rights of other parties attach to the property. Bank v. Powers, 134 Mo. 432; Rice, Stix & Co. v. Sally, 176 Mo. 133; Fahy v. Gordon, 133 Mo. 414; Bevans v. Benton, 31 Mo. 437. (3) The mortgage lien in this case was not recorded and no such change in posses-

sion took place at any time and respondent's rights attached to the property, consequently it was fraudulent and void as to respondent, and even if Scott was indebted to the appellant to the amount of his suit, secured by said lease or mortgage lien, said mortgage or lease was invalid as against the respondent, and it was the duty of the court to declare the same fraudulent as a matter of law and direct the jury to return a verdict for the respondent. Rice, Stix & Co. v. Sally, 176 Mo. 107, 133; Bank v. Powers, 134 Mo. 432; State ex rel. v. Sitlington, 51 Mo. App. 252; Wilson v. Milligan, 75 Mo. 41; Bevans v. Bolton, 31 Mo. 437; Bryson & Hardin v. Penix, 18 Mo. 13; Mead v. Mayberry, 62 Mo. App. 575; Chitwood v. Zinc Co., 93 Mo. App. 225. (4) A mortgage of personal property is not valid against any other person, even with notice, than the parties. Bank v. Powers, 134 Mo. 432; Fahy v. Gordon, 133 Mo. 414; Rice, Stix & Co. v. Sally, 176 Mo. 107, 133; State ex rel. v. Sitlington, 51 Mo. App. 252; Bryson & Hardin v. Penix, 18 Mo. 13; Bevans v. Bolton, 31 Mo. 437; Mead v. Mayberry, 62 Mo. App. 557; Bank v. Holman, 63 Mo. App. 492. (5) Where possession is not delivered there can be no valid chattel mortgage in this State, as against purchasers for value, unless it be executed, acknowledged and recorded. And no equitable doctrine can overcome the force of this statute. Hughes v. Menefee, 29 Mo. App. 192.

JOHNSON, J.—This action was begun in a justice court by the filing of the following statement: "Plaintiff states that on the — day of July, 1904, he was entitled to the immediate possession and in possession of certain goods and chattels, to-wit: About 225 bushels of wheat as mortgagee thereof, which said 225 bushels of wheat were then of the value of $189.50; that afterwards, to-wit, on the — day of July, 1904, said wheat came into the possession of the defendant who

then and there unlawfully converted the same to his own use and disposed of the same to the plaintiff's damage in the sum of $189.50. Wherefore plaintiff prays judgment against the defendant for said sum of $189.50 and for his costs in this behalf expended."

In the circuit court where the cause was taken on appeal, the learned trial judge, after hearing the evidence introduced by the parties, instructed the jury to return a verdict for defendant, whereupon plaintiff took a nonsuit with leave to move to set the same aside and on the overruling of his motion for a new trial, brought the case here by appeal.

The facts in evidence most favorable to plaintiff thus may be stated: In July, 1904, a Mr. Scott occupied a certain farm belonging to plaintiff under the terms of a written lease which had been executed by the parties thereto in 1902, but had not been filed for record. The farm consisted in part of a wheat field and the lease provided that one-half of the wheat crop grown thereon should be delivered to plaintiff at the thresher in part payment of the rent of the premises. Further, it was provided that the landlord should have "the privilege to enter upon and assist second party (the tenant) in caring for all crops raised and to be reasonably paid for his said services and any money by him thus expended and his said labor to be a first lien on the crops raised." Plaintiff testified that when the time came to harvest the wheat crop his tenant, on account of very unfavorable weather conditions found himself unable to meet the exigencies of the situation unaided, and the crop was in danger of being lost. The substance of the testimony is given in this quotation therefrom: "Mr. Scott said he was unable to take care of the crops and asked me to take charge of the threshing thereof and to do and perform whatever was necessary in order to save the crops and that he could not get any hands to assist in the necessary work and

that if I could get hands I should do so under our lease, and that when the time for threshing came, he asked me to take charge of the threshing and I did so and under my direction and control, with his assistance, the wheat was threshed and put in sacks."

The total amount thus expended by plaintiff including the value of his own services was $257.54. The crop produced 1880 bushels, of which 940 bushels were received by plaintiff in payment of rent. Of the remainder, the tenant sold and delivered to defendant 182 bushels and 10 pounds for $163.95. Plaintiff says that at about the time the threshing was completed and before the sacks were divided, he was compelled to be absent from the neighborhood and that the sale to defendant was made during his absence. Members of his family, on being informed that wheat was being hauled from the field by the tenant, investigated, learned of the sale, and telephoned defendant (who is a miller at Weston), that plaintiff claimed a lien on the wheat and warned him against paying over the purchase price to the tenant. This was the first notice of plaintiff's claim to a lien received by defendant and, heeding the warning given, he refused to pay the purchase price to the tenant until the controversy between the latter and his landlord could be settled and, as they did not afterwards succeed in coming to an agreement, he still retains the purchase money. Plaintiff, after unsuccessful attempts to induce defendant to pay the money to him, brought this action.

The tenant, in his testimony, admitted that plaintiff furnished him assistance in harvesting and threshing the crop, and that the account rendered by plaintiff is correct with the exception of two small items. He claims to have paid that indebtedness in full, as well as that for the rent, and states that he remained in possession of the crop during the time it was on the rented premises; that when it was threshed and sacked,

the landlord's half was set apart in a separate pile and afterward delivered to him, and that the wheat sold and delivered to defendant was taken from the half set apart to the tenant.

The cause of action pleaded in the statement is the alleged wrongful act of defendant in converting to his own use personal property on which plaintiff held a mortgage lien. It is not founded on an indebtedness for unpaid rent and the evidence before us conclusively shows that if Scott was indebted to plaintiff at all at the time of the delivery of the wheat to defendant, it was on account of money expended by plaintiff in providing aid to harvest and thresh the crop. In this state of the pleadings and proof, the provision in section 4123, Revised Statutes 1899, that "If any person shall buy any crop grown on demised premises upon which any rent is unpaid, and such purchaser has knowledge of the fact that such crop was grown on demised premises, he shall be liable in an action for the value thereof to any party entitled thereto," has no application. That provision has no other function than to afford a landlord security for unpaid rent, and cannot be invoked to aid in enforcing a lien on the crop acquired by the landlord as a security for a debt of a different nature.

We are of opinion that, as between plaintiff and his tenant, the former has a valid lien on the latter's share of the crop to secure the amount due on the account in controversy between them by virtue of the agreement in the lease we have quoted. So far as it relates to that lien, the lease should be treated as a chattel mortgage. The rule is well settled that "a reservation in the lease of a specific lien on personalty is equivalent to and is, in effect, a chattel mortgage." [Faxon v. Ridge, 87 Mo. App. 299; Feller v. McKillip, 100 Mo. App. 660; 1 Cobbey on Chattel Mortgages,

sec. 113; Jones on Chattel Mortgages, sec. 13; Atta-way v. Hoskinson, 37 Mo. App. 132.]

Treating the lease, for present purposes, as a mortgage of personal property, the lien therein established is inoperative against defendant, for the reason that the instrument, though acknowledged, was not recorded or filed for record as required by section 3404, Revised Statutes 1899, nor was possession of the mortgaged property delivered to and retained by the mortgagee. It has been held repeatedly that a mortgage of personal property is not valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or the mortgage be recorded or filed in the proper county, and where a mortgagor is permitted to retain possession of the property and the mortgage is not filed, it is immaterial whether a subsequent purchaser from the mortgagor has actual notice of the existence of the lien at the time of the sale. [Feller v. McKillip, supra; State ex rel. Kaufman v. Sitlington, 51 Mo. App. 252; Mead v. Maberry, 62 Mo. App. 557; Hughes v. Menefee, 29 Mo. App. 192; Faxon v. Ridge, supra; Bryson v. Penix, 18 Mo. 13; Bevans v. Bolton, 31 Mo. 437.]

The fact appears to be undisputed that defendant had no actual knowledge of the existence of the lien claimed by plaintiff until after he had purchased the wheat and part of it had been delivered, but had he known of that fact at the time the sale was made, such knowledge would not have subjected his title to an unrecorded lien nor infected the sale with fraud against the rights of plaintiff.

But, it is urged by plaintiff that he was in the actual possession of the wheat at, and prior to, the time the sale was made to defendant. We do not find any substantial evidence to support this contention. True, plaintiff in his testimony stated that he was in pos-

session of the property with the consent of his tenant, but the facts disclosed by him from which he draws this conclusion indubitably establish the contrary fact that the tenant retained the actual possession of his share of the crop. The premises on which it was grown and where it was situated at the time of the sale were in the possession of the tenant as lessee. The mere fact that plaintiff gave his tenant assistance in saving the crop at the request of the latter does not warrant the inference, either as one of fact or law, that the tenant thereby divested himself of the possession thereof. The statute contemplates that a change of possession of mortgaged property from mortgagor to mortgagee, in order to dispense with the necessity of filing the instrument for record, must be actual and visible—regard being had to the situation and character of the property—and such change must take place before the rights of other parties intervene. [Rice, Stix & Co. v. Sally, 176 Mo. 107.] As we have said, there is no fact or circumstance in evidence which tends to show an actual change of possession, but if there were such evidence, there certainly is none from which the fact that the change was visible may be inferred.

It follows from what has been said that no error was committed in sustaining the demurrer to the evidence. Judgment is affirmed. All concur.