JAMES W. BUDD, RESPONDENT, v. CAL BUDD ET AL., APPELLANTS.—
122 S. W. (2d) 402.

Kansas City Court of Appeals. June 27, 1938.

*Collins & Osborn* and *Ewing, Ewing & Ewing* for appellants.

*Waldo P. Johnson, Lee E. Crook* and *W. T. McCaffree* for respondent.

REYNOLDS, J.—This is an action for damages for alleged fraud and deceit in the exchange of stocks. The cause originated in the circuit court of Cedar county and was transferred therefrom to the circuit court of Vernon county, in which court it was tried at the May term, 1937, resulting in a verdict and judgment for the plaintiff in the sum of $1000; and, from this judgment, the defendants have appealed.

The plaintiff is a nephew of the defendant Cal Budd and a cousin of the defendant J. P. Budd, who is a son of Cal Budd. The plaintiff is also sometimes known as Cal or Cally Budd and is sometimes so referred to in the testimony. The defendant J. P. Budd is sometimes referred to as Ples Budd.

In June, 1931, the plaintiff was the owner of four shares of stock in the Associated Savings & Loan Association of Kansas City, Missouri (hereinafter called the loan association), of the par value of

$500 each or of the aggregate par value of $2000, which he had purchased about a month earlier. On June 15 or 16 of that year, he exchanged this stock in the loan association for twenty shares of stock of the par value of $100 each in the Associated Agency, Inc., also of Kansas City, Missouri (hereinafter referred to as the agency).

The plaintiff contends that, at the time of the exchange, the stock in the loan association was worth the par value thereof and that the stock in the agency was entirely worthless and that he was induced to make such exchange by the defendants through certain false and fraudulent representations made by them to him touching the value of the stock in the agency, its desirability as an investment, its ready marketability, and the assets of the agency.

The cause was tried on the plaintiff's second amended petition, which is as follows:

''Plaintiff states that on the 15th day of May, 1931, defendants sold to plaintiff two thousand dollars par value of full paid stock in the Associated Savings and Loan Association, a corporation organized and existing under the laws of the State of Missouri, being a mutual Savings Association; that said association was at that time and at all times since has been a solvent and safe mutual savings association and the stock thereof was at said time worth the par value thereof and under the bylaws and regulations of said association could be surrendered to said association and said association would pay the par value thereof in cash.

''Plaintiff states that thereafter on, or about the 15th day of June, 1931, the defendants proposed that plaintiff exchange said stock in said Associated Savings and Loan Association for twenty shares of stock of the par value of One Hundred ($100.00) Dollars each of the Associated Agency Incorporated, a corporation organized and existing under the laws of the State of Missouri; that the defendants represented that the said Associated Agency Incorporated had tangible assets consisting of real estate loans and other securities exceeding its capital stock and all liabilities; that its stock was reasonably worth the par value thereof; that the same was a safe, conservative and sound investment. Defendants further represented to plaintiff that they were selling said stock for said Associated Agency Incorporated for the purpose of raising additional capital for said corporation, and that the same was treasury stock.

''Plaintiff further states that said representations were untrue; that said Associated Agency Incorporated had no tangible assets of substantial value; that said stock at said time was and has since remained valueless and unmarketable; that the stock sold and delivered to plaintiff was not treasury stock of said corporation, but was stock which had been issued to and was owned by individual stockholders.

Plaintiff further states that the defendants knew the condition of said Company, i. e., Associated Agency Incorporated, and knew that said representations were false and fraudulent; that said representations were made by defendants for the purpose of inducing said exchange of stock and with the intention that plaintiff should believe, rely upon and act on said representations; that the plaintiff did not know that said representations were false and untrue, but did believe and rely upon said representations and acted thereon and in pursuance thereof exchanged and delivered his said·stock in the Associated Savings & Loan Association in exchange for said twenty shares of stock in the Associated Agency Incorporated.

"Plaintiff further states that the defendants sold said stock to plaintiff not as an isolated transacion, but as part of a general sales campaign conducted by them and others for the sale of stock in said Associated Agency Incorporated; that neither the defendants nor the said Associated Agency Incorporated were authorized by the Securities Commissioner of the State· of Missouri to sell said stock and that said sale was made in violation of the provisions of the security Act of the State of Missouri; that thereby said sale was illegal and invalid and contrary to law.

"Plaintiff states that by reason of the facts herein stated he has been damaged in the sum of Two Thousand ($2,000.00) Dollars.

"Wherefore, Plaintiff prays judgment against the defendants for the sum of Two Thousand ($2,000.00) Dollars with interest at the rate of six (6) per cent·from the 15th day of June, 1931, together with the costs of this action."

Such amended petition, at the conclusion of the trial, was by permission of the court amended by the plaintiff to conform to the evidence, after all the evidence was in, by interlineation in the second paragraph thereof with. the words, "and that it was a good deal for plaintiff and a better deal than the stock in the savings and loan association and would pay better dividends," following the words therein, "that the same was a safe, conservative and sound investment."

The answer to the second amended petition is as follows:

"Come now the defendants and file their amended answer herein and for answer to plaintiff's second amended petition deny each and every allegation therein contained.

Further answering, defendants say that plaintiff is not entitled to recover under and by virtue of the provisions of Section 2970, Revised Statutes of Missouri, 1929."

The evidence discloses that the plaintiff was a farmer living southeast of Eldorado Springs in Cedar county, Missouri; that the defendant Cal Budd lived at Independence, Missouri, and the defendant J. P. Budd (Ples Budd) lived at Eldorado Springs. The parties had lived at Eldorado Springs and in the vicinity thereof

for thirty years or more until defendant Cal Budd moved to Independence, Missouri, a short time before the exchange of the stocks in question. The agency had been organized by one R. L. Robertson and one O. A. Swartz and another during the year of 1930. Robertson and Swartz owned all the stock that was issued at the time of its organization except two shares. Robertson was president of the corporation, and Swartz was its secretary. The capital stock of the corporation was paid up by transferring to it a contract between Robertson & Swartz (copartners) and the loan association, by which Robertson & Swartz had the exclusive right to sell stock of said loan association in the State of Missouri, and also by which Robertson & Swartz had the right to a commission on all loans made by such loan association. The contract was assigned to the agency upon a valuation of $63,000; and Robertson and Swartz gave their notes to the corporation for $12,000 (payments on which said notes were afterward made in cash), thereby making the total capital stock of the agency when incorporated $75,000. It is shown that the agency made as high as $2,000 per month in commissions under the contract with the loan association and that the agency had paid one or two semi-annual dividends of 4 per cent before the exchange of the stock in question and two afterward. There were several other persons living in Kansas City, in north Missouri, and in Cedar county who owned stock in the agency at the time of the exchange of stocks in question, in 1931. Neither of the defendants had any stock in the agency at any time, and neither of them knew anything about what the assets of the agency were or anything about the manner in which its business was conducted or anything about its financial condition. On June 16, 1931, Robertson and Swartz came through Independence on their way to Eldorado Springs and saw the defendant Cal Budd, with whom Swartz was acquainted, and picked him up and took him along with them to visit his relations. The three drove to Eldorado Springs where they arrived about one o'clock or possibly a little thereafter. Robertson went his way on some other matters and was not again heard of that day. Cal Budd started visiting around among his acquaintances and ran across his son and codefendant, J. P. Budd. The two met Swartz a little later in the afternoon, and Swartz told them that he was going out to see the plaintiff, James William Budd, and asked them to go along. They did so. Neither of the defendants, Cal Budd or J. P. Budd, up to that time, knew Swartz was going out to see the plaintiff; and neither knew anything of any purpose that Swartz might have had to make a deal with the plaintiff to trade him agency stock for his loan association stock. Swartz and the plaintiff had known each other for thirty years or more and were neighbors and good friends in their boyhood days.

When they reached the plaintiff's place, according to the plain-

tiff's testimony, the defendant Cal Budd said to him, "Here is a better deal for you, Calvin, take and sign that one over—" referring to the loan association certificate of stock—"and take up this one," referring to the agency certificate of stock. "It will pay you 8% interest." The defendant J. P. Budd (Ples) said, "Father has got stock in there, and oh, oh, oh, how they are paying him, paying him, paying him, paying him;" and Swartz said, "This is a better deal for you." That such statements were made was denied by the defendants and also by Swartz.

The evidence tends to show that the certificate of stock in the agency for which the plaintiff exchanged his loan association stock was delivered to him by Swartz by mail from Kansas City shortly after the exchange was made. It does not appear that the plaintiff ever made any complaint to Swartz or to Robertson about his stock until after he had ceased receiving dividends, which was after the agency failed in 1932. There is some evidence to the effect that, upon receipt of his certificate of stock from Swartz, he complained through the defendants of the stock because it was not stated in the certificate what rate of dividends was to be paid and that, not hearing from such complainants, he kept the stock and thereafter collected two semi-annual dividends of $80 each thereon, until the agency failed by reason of the failure of the loan association, during the year of 1932.

It appears from the evidence that the defendant J. P. Budd had an agency contract with Robertson and Swartz to sell loan association stock. Robertson and Swartz appear to have had an exclusive agency with the loan association for the sale of its stock in Missouri. However, it does not appear that the defendant J. P. Budd had any connection whatever with the agency for the sale of its stock, either directly or through Robertson & Swartz or either of them personally. The evidence does not show that the defendant Cal Budd had any connection whatever with either the loan association or the agency. It appears from the evidence that the defendant J. P. Budd, as agent for the sale of the loan association stock, sold to the plaintiff the shares of stock therein which he exchanged for the agency stock. The petition alleges that such loan association stock was sold to the plaintiff by both defendants, but the evidence does not show any authority in the defendant Cal Budd to sell loan association stock.

At the conclusion of the plaintiff's case, the defendants requested an instruction in the nature of a demurrer, which was denied by the trial court.

The defendants assign error directed at the action of the trial court in refusing their requested instruction in the nature of a demurrer at the close of the whole evidence; in permitting the plaintiff to amend his petition after all of the evidence was in by adding to the

statements alleged therein to have been made by the defendants touching the agency, the assets thereof, the stock therein, its value and marketability, and its character and desirability as an investment the further statement, "and it was a good deal for plaintiff and a better deal than the stock in the savings and loan association and would pay better dividends," referring to the deal in which the plaintiff exchanged his loan association stock for stock in the agency; in giving instructions Nos. 1 and 4 for the plaintiff; and in permitting certain testimony of the witness R. L. Robertson touching his knowledge in advance, through Swartz, of the transaction in question and of the defendant J. P. Budd's intended connection therewith. Such assignments may be disposed of together.

In some respects, this is a peculiar case. The petition proceeds on the theory, and so charges, that the defendants sold to the plaintiff $2000 par value of loan association stock and that thereafter they proposed that the plaintiff exchange such stock for twenty shares of stock of the par value of $100 each of the agency, which the plaintiff did by reason of certain alleged statements made to him by the defendants at that time.

It charges that the defendants represented to the plaintiff that the agency had tangible assets consisting of real estate loans and other securities in excess of the amount of its capital stock and all liabilities; that its stock was reasonably worth the par value thereof and was ordinarily saleable and marketable at such value; that the same was a safe, conservative, and sound investment. Yet, there is no evidence in the record which shows that the defendants or either of them made such statements or any of them.

The evidence shows that the defendants called upon the plaintiff with one Swartz, at his home in the country near Eldorado Springs, Missouri, and that they were present with Swartz at the time that the plaintiff exchanged his stock in the loan association with Swartz for stock in the agency. Swartz was one of the stockholders in and one of the officers of the agency. When the transaction was completed with the plaintiff and the plaintiff had handed his certificate of stock in the loan association to the defendant J. P. Budd, Swartz, upon the suggestion of the defendant Cal Budd, executed a written receipt which he signed and delivered to the plaintiff for $2000 expressed to be in payment of twenty shares of common stock of $100 each in the agency and afterward delivered to the plaintiff, through the mail from Kansas City, Missouri, the certificate of stock in such agency for such shares. The receipt referred to bore the notation thereon, "Will pay 6 per cent or more."

The certificate of stock in the loan association which was exchanged by the plaintiff was assigned by him to bearer and was presented for withdrawal to the loan association by R. L. Robertson, president of the agency and a partner of Swartz, the secretary of such agency;

and two checks for the sum of $1000 each were thereupon issued by the loan association to him, one of which, when paid by the bank, bore the endorsements, "R. L. Robertson," and "Robertson & Swartz by R. L. Robertson," and the other of which bore the endorsements, "R. L. Robertson," "Associated Agency, Inc., by R. L. Robertson, President," and "O. A. Swartz;" and these facts in themselves are sufficient to show that the defendants did not make the exchange as charged but that the same was made by Swartz for himself and Robertson or the agency.

While the defendants were present at the time that the exchange of the stocks with the plaintiff was made, such mere fact does not show that they made such exchange or that they were responsible for such exchange as owners of such stock or as agents for Robertson & Swartz or for the agency. The only connection which they had with the transaction in question, aside from their presence at the time that it was made, which might be said to be shown by any evidence in the record is that, when the deal for the exchange came up, one of them stated that it was a good deal for the plaintiff and that stock in the agency was a better investment than stock in the loan association, or words to that effect, and that it would pay better dividends.

There is no evidence in the record to show that either the defendant J. P. Budd or the defendant Cal Budd owned any stock in the loan association or in the agency, although there is evidence showing that the defendant J. P. Budd was an agent for the sale of the loan association stock. There is no evidence in the record to show that either of the defendants was an agent for Swartz or for Robertson & Swartz or for the agency for the sale of agency stock; but, upon the other hand, all of the evidence in the record touching such question is to the effect that they were not agents for them or any of them. The evidence merely tends to show that the defendants were present on the occasion of the transaction in question upon the invitation of Swartz to accompany him to the plaintiff's residence and that they accepted the invitation solely for the purpose of accompanying Swartz and paying a visit to the plaintiff, who was their kinsman and who was also a long-time friend of Swartz. So far as revealed by the record, they had no knowledge at the time of the acceptance by them of the invitation of Swartz that he intended to effect or seek to effect an exchange of agency stock with the plaintiff for the stock held by the plaintiff in the loan association, other than such as may have been imported by the statement of Swartz to the defendant J. P. Budd that he wanted to try to raise some money for the agency. There is no evidence in the record of any prior arrangement between Swartz and the defendants that they should accompany him for the purpose of conducting or influencing such transaction. There is no evidence in the record to the effect that

the defendants represented to the plaintiff that they were selling stock—treasury stock or other kinds—for the agency for he purposes of obtaining additional capital for such corporation. There is no evidence whatever tending to show that they represented to the plaintiff that they were selling agency stock for such agency or for any person. There is no evidence to show that they received any benefit from the transaction or any compensation on account thereof. Upon the other hand, the record is to the contrary and to the effect that they were not even promised anything.

However, they would still be liable to the plaintiff if they engaged in the perpetration of a fraud upon him, even though they did not share in the fruits thereof or receive any compensation therefor. [Leimkuehler v. Wessendorf, 323 Mo. 64, 18 S. W. (2d) 445, l. c. 452.]

It is clear that the allegations of fraud in the petition as originally made furnish no support for the action of the trial court in denying the defendants' requested instruction in the nature of a demurrer for the reason that there was no evidence offered on the trial to establish such allegations.

The only allegation of fraud to be considered in connection with the ruling on the demurrer is the one added to the petition by way of amendment at the close of the trial in the circuit court, after all of the evidence was in, to the effect that the exchange of the plaintiff's stock in the loan association for stock in the agency was a good deal for the plaintiff and that said stock in the agency was a better deal than the stock in the loan association and would pay better dividends, for the reason that such is the only allegation of fraud in support of which there is any evidence to be found.

Whether it was a sufficient allegation upon which to base an action for fraud and deceit depends, in the first instance, upon whether it is to be treated as an allegation of a statement of fact upon the part of the defendants as to the value of the stock of the agency as compared with the value of the stock of the loan association as an investment or treated as an allegation of a mere expression of opinion on the part of the defendants as to the comparative values of such stocks for investment purposes and, in the second instance, if treated as an allegation of a statement of fact by the defendants, upon whether it was an allegation of a statement required to be in writing (by section 2970, Revised Statutes of 1929), relating to the ability of the agency to earn and pay dividends in excess of those earned and paid by the loan association.

A mere expression of opinion as to value ordinarily is not actionable unless the parties stand on an unequal footing. [Union National Bank v. Hunt, 76 Mo. 439; Stonemets v. Head, 248 Mo. 243, 154 S. W. 108; Bondurant v. Raven Coal Co. (Mo. App.), 25 S. W. (2d) 566; 26 C. J., art. 22, p. 1085.] The parties here did not so stand.

Fraud cannot be based on mere statements of opinion as distinguished from statements of fact. [Stacey v. Robinson, 184 Mo. App. 54, 168 S. W. 261.]

It is true, however, that, where the statement—although relating to a matter of opinion—is accompanied by a statement of fact or in itself amounts to a statement of fact, if fraudulent, it is actionable.

When analyzed, the statement relied upon by the plaintiff in this case appears to be a mere statement of opinion, not in itself amounting to a statement of fact and unaccompanied with the statement of a single fact in connection therewith, unless the statement that the stock of the agency would pay better dividends than the stock of the loan association be considered as the statement of a fact. If so considered, it must be considered as one relating to the future and one which is not actionable. An actionable representation must relate to an existing fact or to one that has existed. If it relates only to the future, it is not actionable.

It will be noted that the reference in the statement to the payment of dividends was not to the effect that the agency stock at the time of the exchange paid better dividends or had paid better dividends than the loan association stock but was clearly one which referred to the future and was but a statement that such stock in the future would pay better dividends than the loan association stock. The statement that such stock was a better deal for the plaintiff than the loan association stock was clearly a mere statement of opinion and could not have been considered by the plaintiff in any light different than a mere statement of opinion. The defendants made no statement concerning the financial condition of the agency or concerning its assets. In fact, the record shows that they had no knowledge greater than did the plaintiff; and they made no claim of any knowledge or means thereof. They owned no stock therein; they were not officers thereof; nor were they shown to have been agents thereof for the sale of its stock. The plaintiff had the same knowledge or means of knowledge of the assets and financial condition of the agency, so far as is shown by the record, as did the defendants. The only fact upon which they based their opinion as to the comparative values of investments in the one stock or the other was, so far as is shown by the record, that the agency would pay more dividends than the loan association, a matter relating to the future, which was, of course, mere speculation on their part, which the plaintiff well knew or should have known.

If such statement had related to the time of the transaction in question, it would, nevertheless, not have been fraudulent, for the reason that the record shows that at the time it was in fact paying more dividends than the loan association and that the alleged statements of the defendants at that time were true and not false.

The defendants, so far as the record shows, did not have any in-

terest in the transaction complained of, in which the stock was exchanged; and there is no reason shown why they should have practiced a fraud on the plaintiff or have attempted to do so in effecting an exchange of such stocks, all of which in the final analysis may, however, be immaterial. That they were present at the time that the exchange took place and made such statements as are charged does not seem to have been the result of any interest they had in the matter or of any pre-concerted arrangement between them and the agency or its officers or any of its stockholders; nor does it appear that such statements were made with the intention on their part of benefiting themselves or of benefiting the agency at the expense of the plaintiff. To hold upon the record in this case that the defendants or either of them intended to or did practice a fraud on the plaintiff would be to go a long way. They were evidently under the belief that the agency stock would pay better dividends in the future than the loan association stock did and that stock in such agency would prove a more satisfactory investment than the stock in the loan association. At least, it was not shown that they did not honestly believe that an investment in the agency stock would be a better investment than one in the loan association stock or that their alleged statements that an investment in the agency stock would be a better investment than in the loan association were untrue or false. The record in this case shows that the agency stock was paying semiannual dividends of 4 per cent, or dividends at the rate of 8 per cent per year, at the time of the transaction involved herein, which was in excess of the dividends of 6 per cent agreed to be paid by the loan association. It shows that, prior to the exchange of the stocks in question, in the brief period that it had been operating, the agency had paid one semi-annual dividend of 4 per cent; and it shows that, after such exchange had been effected, it paid two semi-annual dividends of 4 per cent each, 8 per cent for the year thereafter, when it ceased payment of dividends because of the failure of the loan association. Of course, whatever else their alleged representations may have imported, they did not import what the value of an investment in the agency stock might be a year thereafter. The record does not show that, at the time of the exchange, the agency was not paying dividends in excess of those paid by the loan association or that its stock was not a better investment than the stock of the loan association. The record shows that, at the time of the transaction in question and prior thereto, the agency was the owner of a valuable contract with the loan association, which at times yielded a revenue of $2000 per month. Whether it yielded such revenue every month or not is immaterial; and the record does not show; but, from the payment of dividends made, it is a matter to be reasonably inferred that the agency had a steady income from that or some other source in excess of $6000 per year. It ceased paying

dividends only when the loan association failed and ceased to operate and was merged with another association, which was more than one year after the transaction involving the exchange in question occurred. Certainly, the fact that it failed one year thereafter, under the circumstances shown in the record and for the reasons shown, is not sufficient to show that the alleged representations made were false when made.

Just how the plaintiff could have been damaged by the transfer of stocks does not appear. If the plaintiff had kept the original loan association stock, he would have lost it by reason of the failure of the loan association at the same time he suffered his loss in the agency stock. The loss in the agency stock was occasioned by the failure of the loan association at the same time he suffered his loss in the agency stock. The loss in the agency stock was occasioned by the failure of the loan association. The agency stock was good just so long as the loan association stock was good.

It is one of the essentials of an action for fraud and deceit based on misrepresentations not only that the representations must have been false, but that the party relying on such representations must have been false, but that the party relying on such representations as true must have been damaged thereby. [Donaldson v. Donaldson, 249 Mo. 228, 155 S. W. 791; Tinker v. Kier, 195 Mo. 183, 94 S. W. 501; 26 C. J., art. 77, p. 1167.] Upon the record in this case, it is impossible to find where the plaintiff was damaged by reason of the exchange of stocks or the representations alleged to have been made by the defendants, which the plaintiff claims effected such exchange. It is not shown in the first place that the representations alleged to have been made by the defendants were false or untrue. Such representations, not having been shown to be false, are not actionable. [Tinker v. Kier, *supra*; Feller v. McKillip, 100 Mo. App. 660, l. c. 664, 75 S. W. 379.] The burden of proof was upon the plaintiff to show not only that the alleged representations were false, but that he was damaged by reason of acting thereon. He has not shown either.

The cause should not have been submitted to the jury. The requested instruction should have been given, and the trial court's action in refusing it was erroneous.

From the conclusions thus reached, it becomes unnecessary to consider other points raised and urged in the briefs of the parties.

The judgment is reversed. All concur.