This is a consolidated case, embracing two successive appeals which were taken by appellant, Washington-Grand Realty Company, in connection with the prosecution of its claim to the proceeds of a receiver's sale of the contents of certain premises known as 516 North Grand Boulevard and 3546 Washington Boutevard, in the City of St. Louis, which premises appellant had leased to defendants Merlo and Fabbri, or their successors and assigns, for occupation and use as a restaurant.
Immediately upon the execution of the lease Merlo and Fabbri organized a corporation known as Miami Club Restaurant, which thereupon succeeded to their rights and obligations under the lease, and thereafter continued the operation of the business until, following a foreclosure sale under a pretended chattel mortgage to one Moretta, the assets and chattels formerly owned by Miami Club Restaurant were purportedly transferred by Moretta to a subsequently organized corporation known as New Miami Cafe, Inc.
Appellant is an intervener in a suit upon a creditor's bill, which was brought by plaintiff, Matz, a judgment creditor, against Miami Club Restaurant, Merlo, Fahbri, and New Miami Cafe, Inc., the purpose of the suit having been to have the chattel mortgage to Moretta and all the subsequent transfers of the property and assets declared fraudulent and void as to Matz and other creditors of Merlo, Fahbri, and Miami Club Restaurant, and the property and assets subjected and applied to the payment of their respective claims.
Upon a trial of the issues, a decree was rendered in the plaintiff's favor, setting aside numerous transactions which the court found had been fraudulently entered into by the defendants for the purpose of defeating the claims of creditors; adjudicating that all the assets and chattels which had been the property either of Merlo and Fahbri or of Miami Club Restaurant, and which were later transferred to Moretta or to New Miami Cafe, Inc., should be held to be the property of Miami Club Restaurant, subject to the claims of those of its creditors and the creditors of Merlo and Fahbri who might join in the suit; and directing that the receiver theretofore appointed by the court on the order to show cause should continue in full charge of the *Page 740 
business to the end that the claims of all creditors joining in the suit might be established.
The defendants' appeal from such judgment resulted in its subsequent affirmance by this court, Matz v. Miami Club Restaurant, Mo.App., 108 S.W.2d 975.
Following the entry of such decree by the circuit court, appellant, Washington-Grand Realty Company, intervened in the cause, asserting its status as lessor of the premises under the lease heretofore referred to, and making claim, under the terms of the lease, to certain of the property and assets which had been brought upon or added to the premises by the defendants during the period of the leasehold and were located therein at the time of the filing of the plaintiff's suit.
One clause of the lease had provided that any "alterations, additions, or improvements" which might be made to the premises by the lessees should be and remain the property of the lessor, and should be surrendered with the premises, as a part thereof, upon the termination of the lease.
Relying upon such provision, appellant asserted that certain of the assets (such as booths, ice boxes, a soda fountain, and the like) constituted fixtures inseparable from the real estate itself, and as such had become the property of appellant, the owner and lessor of the real estate, to the exclusion of the claims of creditors of the lessees.
A further clause of the lease provided that all "property and furniture" of the lessees situate upon the premises during the term of the lease should be bound for the payment of the rent reserved and for the fulfillment of all the covenants of the lease; that a lien was thereby created upon such property and furniture in favor of the lessor for the payment of the rents and fulfillment of such covenants; and that in the event the rent was not paid when due, or any covenant was not fulfilled at the time and in the manner contemplated, the lessor should thereupon be entitled to the immediate possession of such property and furniture, and should be entitled to enter upon the premises and take possession of and sell such property and furniture, the proceeds of the sale, after payment of the costs and expenses of the same, to be applied to the payment of any rent due or toward the proper performance of any unfulfilled covenant.
Relying upon the latter provision, appellant asserted that the remaining articles included among the contents of the premises (such as tables, chairs, silverware, and the like), which were not to be characterized as fixtures, were covered by a "contract lien" in appellant's favor which was created by the lease itself; that such lien was superior to the lien of the receiver of the property on behalf of general creditors of the lessees; and that the assets and chattels covered by such lien were therefore subject to be taken and sold by appellant, and the proceeds of the sale applied to the payment of indebtedness aggregating some $3,000 which was due appellant from the lessees by way of unpaid rent and the cost of electric current supplied to the lessees.
No proceedings were had upon appellant's intervening petition pending the appeal to this court from the final decree in the principal suit, but upon the affirmance of that decree the claim was heard, resulting in the entry of an order by the court denying appellant's petition.
While appellant's motion for a new trial was pending, the court, upon the application of the plaintiff, Matz, directed the receiver to sell the property and assets in his possession, and at the sale which was held pursuant to such order the sum of $1,625.69 was realized as the best price obtainable. Thereafter the court approved the sale and then in turn overruled appellant's motion for a new trial, following which appellant, in due course, took its appeal to this court from the order denying its petition.
On the same day it applied to the court for an order transferring its alleged lien on the property to the proceeds of the sale of the same, and this being heard and refused by the court, it thereupon applied for and was granted an appeal to this court from the order denying its application.
By stipulation of the parties the two appeals thus separately taken have been consolidated in this court, and very properly so in view of the fact that the whole controversy turns upon the question of appellant's right to have recovered upon its intervening petition. In other words, the only point in issue is that of whether appellant is entitled to have its claim allowed in the first instance, and there is no suggestion made that any rights it might *Page 741 
have had with respect to the particular property and chattels would not attach as well to the proceeds of their sale.
The articles relied upon by appellant as having constituted fixtures inseparable from the real estate consisted, in their entirety, of fifty-three booths, eleven drop lights, two ice boxes, one soda fountain, one back bar, one pastry bench, and one hot water table.
The booths were the ordinary character of booths commonly seen in restaurants, consisting of wooden partitions standing out from the side walls and anchored to the concrete or terrazzo floor with dowel pins to hold them in position. Prior to the time that the successor receiver had gone into the possession of the premises, twelve or thirteen of the booths had already been removed from a portion of the premises which was to be leased out by appellant to another tenant for use as a drug store.
The drop lights were also seemingly of the conventional type of electric lights ordinarily seen in restaurants and like places, consisting of fixtures connected with electric wiring and attached to the ceiling or woodwork.
The ice boxes or refrigerators, soda fountain, bar, and the like were all heavy articles, fastened to the walls or floors to some slight extent, but largely held in position by virtue of their own weight. Pipes ran from all such appliances down through the floor to the basement, and it was shown that the removal of such appliances would necessitate the tearing up of a part of the floor and its subsequent repair.
The respondents (meaning not only the plaintiff, Matz, but also the receiver) maintain that none of the contents of the premises sold by the receiver were at any time a part of the real estate, but to the contrary constituted trade fixtures at all times retaining their character as personal property. This was the view of the situation quite evidently taken by the trial court, and we think correctly so when due regard is had for all the material facts and circumstances of the case.
By the term "trade fixtures" is meant those articles or appliances which are in some manner or to some degree annexed to or connected with the realty by the tenant for the purpose of carrying on the particular trade or business for which the premises were demised to him by the landlord, but which, notwithstanding their annexation or connection, do not become a part of the realty, remaining instead the property or chattels of the tenant, removable by him before the expiration of the term of his lease or the period thereafter during which he holds the premises with the landlord's consent. Finney v. Watkins,13 Mo. 291, 296; 26 C.J. 699.
The elements of a "fixture" (something otherwise personal, but attached to the realty under such circumstances as to become a part of it in the particular instance) are commonly said to be annexation, adaption, and intent, with the latter ordinarily of paramount importance, at least in the case of controversies between seller and purchaser, or between landlord and tenant, where the controlling question is usually that of whether the intention in annexing the article to the realty was to make it a permanent accession to the land. However in a case such as this, where the controversy is between the lessor of the premises and general creditors of the lessees, the question of intention (as between lessor and lessees) is of only incidental importance, and the ultimate issue between the contesting parties is to be determined with more particular emphasis upon the character of the annexation and the uses and purposes of the property or chattels annexed. Cunningham v. Von Mayes, 194 Mo.App. 56,182 S.W. 1059; Donnewald v. Turner Real-Estate Co., 44 Mo.App. 350.
In this instance it is not suggested that the premises in question had been specially erected for use as a restaurant, or that the articles in controversy — the booths, lights, refrigerators, soda fountain, bar, and the like — had been built or manufactured with a view to their permanent incorporation in the particular building. To the contrary, they were apparently the usual and ordinary type of restaurant or bar fixtures, entirely suitable for use in the particular building so long, but only so long, as it was used as a restaurant, and subject to be removed whenever the building, or any portion of it, was taken over for use for any other of numerous business purposes which the building was adapted to serve with equal facility. Indeed it appears, as has already been pointed out, that pending the appeal to this court in the principal suit, certain of the articles were removed with appellant's consent so that a portion of the premises could be leased out by appellant to another tenant *Page 742 
for use as a drug store. Conceding that the removal of the articles would necessarily result in some damage to the building, that fact is of itself in no sense decisive of their status as fixtures, but is only a matter to be considered along with other pertinent circumstances in determining the character of their annexation. With due regard for their use and the purpose of their installation, we conclude, as did the lower court, that the particular articles at all times retained their nature and identity as personal property, and were not "alterations, additions, or improvements" to the realty so as to have become and remained the property of appellant as lessor. Cunningham v. Von Mayes, supra.
Nor was appellant entitled to prevail with respect to its claim of what it denominates a "contract lien" upon the remaining articles included among the contents of the premises — the tables, chairs, dishes, silverware, show cases, cash registers, and the like — which concededly fell within the category of "property and furniture" of the lessees, but were in no sense to be characterized as fixtures inseparable from the realty.
As regards this feature of the case, it seems entirely clear, just as respondents have at all times insisted, that the provision of the lease reserving a lien upon the lessees' "property and furniture" for unpaid rent and for the fulfillment of all the covenants of the lease was in legal effect a chattel mortgage, which (as in the case of every other chattel mortgage), having been neither recorded nor filed as required by statute, was void as against creditors of the lessees, though valid as between appellant and the lessees who were the parties to it. Faxon v. Ridge, 87 Mo.App. 299; Feller v. McKillip,100 Mo.App. 660, 75 S.W. 379; K-M Supply Co. v. Moran, Mo.App.,53 S.W.2d 419; 14 C.J.S., Chattel Mortgages, § 8.
But at this point the question arises as to the status of the respondent receiver, who is actually the other party to the controversy now that the same has resolved itself into one of appellant's right to have a lien impressed upon the proceeds of the receiver's sale of the lessees' "property and furniture" under the order of the court.
Appellant argues that even if it be conceded that the reservation in the lease is void (for want of recordation or filing) as to creditors of the lessees, the receiver may not be regarded as occupying the position of the creditors, but must rather be held to stand in the shoes of the lessees so as to be precluded from asserting and establishing any defense which the lessees themselves could not have asserted and established as against appellant's claim.
While it is undoubtedly true that a receiver, as a general rule, represents the person or estate whose receiver he is, yet under some circumstances, and for some purposes, he may represent the creditors as well as the person or estate in receivership. Craig v. Stacy, 330 Mo. 569, 50 S.W. 2d 104; Alexander v. Relfe,74 Mo. 495, 516; 53 C.J. 324, 325.
In this instance, where the receiver has been appointed in the course of the prosecution of a suit upon a creditor's bill, it would be an anomalous situation indeed if he were to be held to have no better standing or title with respect to the debtors' assets than would the debtors themselves. To the contrary, the very function of a receiver in such a case is to hold the property as an officer of the court, so that when all conflicting interests have been determined, the residue in his hands may be paid over to the party or parties found to be entitled thereto. So it is that in a situation such as this, where the receiver represents all the creditors, he is not to be restricted to the vulnerable title of the parties in receivership, but may defend against a chattel mortgage which is void as to creditors, even though as between the parties to the instrument no such defense could be asserted. 53 C.J. 326.
It follows for the reasons stated that the orders of the circuit court should be affirmed, and the Commissioner so recommends.