Paul Joseph HERZWURM (Plaintiff), Respondent,

v.

MOUND-CITY CAB COMPANY, a Corporation (Defendant), Appellant.

No. 29378.

St. Louis Court of Appeals.

Missouri.

May 15, 1956.

Motion for Rehearing or for Transfer to Supreme Court Denied June 8, 1956.

Robert W. Henry, Heneghan, Roberts & Cole, John J. Cole, St. Louis, for appellant.

Gragg & Aubuchon, William R. Schneider, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action for damages arising out of personal injuries received by the plaintiff. He was assaulted by a member of the Cab Drivers Union while driving one of defendant's cabs. The action is predicated upon the charge that the defendant fraudulently represented to him that a strike by its union drivers was settled and that it was safe to work. There was a verdict and judgment in favor of the plaintiff in the sum of $5,000 for actual damages and the defendant prosecutes this appeal.

The defendant was engaged in the operation of Yellow Cabs in the City of St. Louis. It employed a number of drivers who were paid a salary and drove cabs owned by the company. It also had contracts with a number of drivers who owned their own cabs and paid the corporation a monthly sum for the right to have their cabs painted the yellow color and to use the facilities of the defendant. The defendant had a contract with Local Union No. 405 of the Teamsters Union covering the drivers that they employed. This contract with the union did not expire until 1955. Although the drivers who owned their own cabs were members of the same union, there existed no union contract in relation to them.

On November 30, 1953, the driver owners called a strike. The union wanted to be recognized as the bargaining agent for the driver owners in relation to the monthly charges paid to the company and other conditions affecting their work. The owner drivers set up a picket line and none of the employed drivers would cross the line. On December 1, an officer of the defendant corporation notified the union that the employees under union contract had not reported for work and he was informed by a union official that they had been instructed to return to work on December 4. On December 3, the defendant was granted an injunction against the union and its members restraining them from picketing and from "hindering, interfering with or preventing, or endeavoring to hinder, interfere with, or prevent, by any means" the operation of the cabs.

The plaintiff was employed by the defendant as a cab driver on September 15, 1953, and became a member of the union to which he paid regular dues of $5 per month. After the strike was called at midnight on November 30, he went on strike with the other members of the union. He went down to the company office on the day following to collect his pay and there were pickets in front of the place. They asked him "Why are you down here?" He answered "to pick up my pay." His inquisitor then said "Well, if that is all you want, get it and get the hell out of here." He knew that the interrogation was made to determine whether or not he intended to take out a cab.

The plaintiff heard no more about his work until December 4, when he was informed by a fellow driver that the cab company was calling its drivers, so he first telephoned his home to see if he had received a call and then phoned the company. He talked to a Mr. Sonnenschein, the training and production director of the company. The plaintiff testified that he asked if they had been trying to reach him and further asked if the strike was over. He said that Sonnenschein replied that the strike had been settled and told him to come back to work. The plaintiff's mother was permit-

ted to testify, over the objection of the defendant, that an unidentified woman telephoned her on December 4 at 9:30 in the morning, stating: "I am calling for the Yellow Cab. The strike is settled and we would like for Paul to come and take out a cab." Plaintiff's mother then testified that she asked if the party to whom she was speaking was sure that it was safe for her son to work and the reply was: "Yes, it is perfectly safe." The speaker on the phone did not identify herself, but the plaintiff's mother gave the plaintiff the information when he telephoned his home. It was after he had talked to his mother that he called the cab company. He went directly to the office of the company which was near the place from which he had phoned and as he went to the office he saw the owner drivers in their cars parked in the vicinity of the office but they said nothing to him and there were no pickets at the place. He talked to a Mr. Durney and Mr. Sonnenschein who were both officials of the company and they told him to take a cab out and to work out of Union Station.

Plaintiff drove the cab to which he had been assigned down to Union Station and made two trips from there. While at the station he heard that cabs had been bumped in the rear and some cab drivers at Union Station told him that there had been a disturbance at the Statler Hotel and that the police had stopped it. On his third trip he took some passengers to the south part of St. Louis and after delivering them to their destination he started back but had traveled only a short distance when he was crowded to the curb by an automobile. After he stopped two men got out of the car and one got in the front seat and the other in the back. They instructed him to follow a blue car which pulled around in front of him. He did this and when they had reached a point near a quarry they told him that he was a strike breaker and that they were going to make an example of him. They administered a very severe beating to him, breaking his nose and causing his ears to bleed. After they left he called the police and gave them the license number of the car that had followed him and

identified a man named Saltzman as his chief assailant. Saltzman was a business agent for the union. The plaintiff was hospitalized for a week but fully recovered from the injuries he sustained.

Some of the cabs continued to operate until December 11, when another picket line was set up. During this period of operation there were several other acts of intimidation or assault upon drivers but the assault upon the plaintiff was the first except for an altercation in which Sonnenschein was involved at the Statler Hotel on the morning of the 4th.

The plaintiff's petition charges that defendant knowingly by its fraudulent and deceitful representations induced the plaintiff to re-enter its employment and to suffer the injuries resulting from the assault. The officers and members of the union were made parties on motion of the cab company, but the court dismissed as to them, and no point is made of that. Therefore the only defendant remaining in the case is the Mound City Cab Company.

There are a number of assignments of error raised by this appeal but if it appears from all the evidence, when viewed in a light most favorable to the plaintiff, that the plaintiff has failed to make a submissible case, other assignments need not be considered.

■■ In passing upon the sufficiency of the evidence to make a case of fraud, we are confronted with the testimony of the plaintiff's mother's phone conversation with an unidentified woman who called her and assured her it was safe for her son to return to work. It is contended here, as it was upon trial, that the evidence was not admissible because the identity of the caller was not known. The point is well taken. No party is bound by a conversation over the telephone or otherwise carried on with a person unidentified in any manner by the witness or by circumstances. The agency or authority to act in relation to the particular matter must necessarily be shown and there was no identification of the speaker by recognition or circumstances,

consequently the conversation was improperly admitted. Meyer Milling Co. v. Strohfeld, 224 Mo.App. 508, 20 S.W.2d 963; State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.2d 462 (en banc).

■ Regardless of this, however, the statement that the driver would be safe was nothing more than an opinion. Fraud must be based upon a statement which relates to an existing fact. Unless the opinion is accompanied by a fraudulent statement of fact it is not actionable. Budd v. Budd, 233 Mo.App. 377, 122 S.W.2d 402. The statement that the strike had been settled was a statement of fact. Yet even if this was knowingly and falsely made there remained other elements of fraud requiring proof. One of the necessary elements is the right of the plaintiff to rely upon the representations of the defendant. In the case of Wood v. Robertson, Mo., 245 S.W.2d 80, 84, the Supreme Court of Missouri, in discussing fraudulent representations, said:

"* * * the courts will not protect those who, with full opportunity to do so, will not protect themselves. And where the means of knowledge are at hand and are equally available to both parties and the subject matter is alike open to their investigation, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other party's misrepresentation, if there be no confidential relationship between the parties and if no fraudulent devices have been practiced upon the one alleged to have been defrauded to induce him to refrain from making an inquiry, or to anesthetize his sense of caution."

As that applies to the facts before us, we find no confidential relationship between the plaintiff and the defendant. Actually they were in adversary positions. It was the union which was directing its members when to work and when to strike. Admittedly the plaintiff made no inquiry of his union and he failed to avail himself of knowledge readily within his reach. Wolf v. Kansas City Tire & Service Co., Mo.

App., 257 S.W.2d 408; Conklin v. Missouri Pacific R. Co., 331 Mo. 734, 55 S.W.2d 306.

Other questions are present which make an action in fraud of questionable validity upon the facts before us, but since the plaintiff's case failed, for the reasons stated, these points need not be considered.

· In view of the foregoing, it is the recommendation of the Commissioner that the judgment be reversed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed.

RUDDY, Acting P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.